[Civ. No. 18013. Second Dist., Div. Three. Mar. 29, 1951.]

Estate of FRANK A. HARVEY, Deceased. HERBERT GALL et al., Respondents, v. ALICE B. HARVEY, as Administratrix With the Will Annexed, etc., Appellant.

Simpson & Wise for Appellant.

Herbert Gall for Respondents.

WOOD (Parker), J.—Alice B. Harvey, administratrix with the will annexed of the estate of Frank A. Harvey, deceased, appeals from an order directing said administratrix to pay to Herbert Gall $7,000 for extraordinary legal services rendered in behalf of said administratrix.

Appellant contends that the evidence is insufficient to support the findings that such services were of the reasonable value of $7,000.

In 1908 Frank A. Harvey (decedent) and his brothers, Jesse and James, formed a partnership for the purpose of supplying rock, gravel, and cement to contractors. In 1926 they formed a corporation known as Harvey Brothers, Inc., and they transferred to the corporation all the assets of the partnership except its good will, and in exchange therefor they received the stock of the corporation which they divided equally among themselves. After the corporation was formed they continued the partnership and used the corporation's property in the partnership business. Frank A. Harvey died in 1946, and thereafter the two brothers continued to conduct the corporation and partnership in the manner those businesses had theretofore been conducted. There is a provision in the will of Frank (decedent) purporting to give his interest in the partnership to Jesse and James in trust to continue the partnership for 20 years in every respect as if he had not departed this life, and to pay to his widow (administratrix) and his brothers and sisters certain portions of the income from the partnership; and at the expiration of the 20 years to convert his partnership interest into cash and distribute the cash in a certain manner. The administratrix of the estate of Frank A. Harvey commenced an action against the two brothers, Jesse and James, and alleged that they had received all funds accruing for the benefit of the corporation; that they had transferred such funds to the partnership and to themselves; and that unless they were restrained and required to account they would continue to dissipate the corporate funds, and the stock which she held as administratrix would become worthless. The judgment in that action (entered on January 8, 1948) was in favor of defendants.

About February 11, 1948, the petitioners herein, Herbert Gall and Thomas F. McGrath, became attorneys of record for the administratrix in the probate proceeding and in said action against the two brothers. Those attorneys perfected an appeal from the judgment in said action. The reporter's transcript on appeal contained 180 pages. Appellant's opening and reply briefs therein contained 27 and 16 pages respectively. Respondents' brief therein contained 16 pages. In respondents' (the two brothers') brief on that appeal they asserted that under their "theory of the case, sustained by the

trial court's judgment, the equal division of the ownership of the two organizations was not disturbed by Frank A. Harvey's death, and the practice is consequently still harmless and permissible." The judgment was reversed with instructions to the trial court (1) to determine whether any disbursements of corporate funds had been made to the defendants without consideration; (2) to enjoin the defendants from making such payments; and (3) to adjudge that the corporation be reimbursed for such payments if any. (See *Harvey* v. *Harvey,* 90 Cal.App.2d 549, 558 [203 P.2d 112].) In that decision on appeal the court said at page 554: "The fact that respondents asserted that they would continue to operate said business for themselves and as trustees under the will did not justify continued payments of money to the partnership if it was not entitled thereto. . . . While such payments may have been the custom in decedent's lifetime, it by no means follows that it is proper to continue them after the dissolution of the partnership by his death." Mr. Gall testified that approximately 100 hours of his time were involved on that appeal, and that his services therein were of the reasonable value of $20 per hour or $2,000. Mr. McGrath testified that he spent 10 hours in matters pertaining to the appeal, and that his services were of the reasonable value of $20 per hour. Edward Fitzpatrick, an attorney associated with Mr. Gall, testified that he spent 53½ hours in connection with the appeal, and that his services were of the reasonable value of $1,070. The total value of such services, according to the testimony of said attorneys, was $3,270.

Before said attorneys had been employed by the administratrix, the superior court had issued a citation directing the two brothers to file in the probate proceeding an account of the affairs of the partnership. Said attorneys filed objections to the account on the ground that it was inadequate. Soon after the hearing upon said account and objections had commenced, the judge suggested that the will should be construed, and thereupon the matter regarding said account was placed off calendar. Mr. Gall testified that, in preparation for that hearing, he had studied the account, had conferences with the administratrix, and had subpoenaed Jesse and Jesse's son and two or three of the employees of the partnership; that he spent about 12 hours in the matter of the account, and that his services were of the reasonable value of $250. Mr. McGrath testified that he spent 14 hours thereon and that his services were of the reasonable value of $280. Mr. Fitz-

patrick testified that he spent 4 hours in the matter of the account and that his services were of the reasonable value of $80. The total value of such services, according to the testimony of said attorneys, was $610.

Said attorneys, on June 8, 1948, filed a petition on behalf of the administratrix for determination of heirship and for construction of the will of decedent. They asserted therein that the provision in the will purporting to create a trust in decedent's estate in the partnership was void; and that the property of decedent was community property. The two brothers filed an answer and resisted those contentions. The hearing required two days, and the matter was submitted upon briefs. The attorneys for the administratrix filed opening and reply briefs consisting of 21 and 16 pages respectively. The brothers' brief contained 19 pages. The decision was in favor of the administratrix—that the provision regarding a trust was void, and all the property was community property except a parcel of real estate. Mr. Gall testified that he spent 75 hours on this matter, and that his services were reasonably worth $1,500. Mr. McGrath testified that he spent 6 hours on this matter, and that his services were reasonably worth $120. Mr. Fitzpatrick testified that he spent 28 hours, and that his services were reasonably worth $560. The total value of such services, according to the testimony of said attorneys, was $2,380.

Said attorneys, on June 20, 1949, filed a stockholders' suit on behalf of Mrs. Alice B. Harvey, individually, and as administratrix, to dissolve the corporation, to require it to account for money wrongfully transferred to others, to enjoin it from wrongfully disposing of its property, to dissolve the copartnership, to require the surviving partners to account, to obtain a decree declaring the rights of the parties to the property in controversy, and to obtain the appointment of a receiver. An order to show cause why a receiver should not be appointed, and an order restraining defendants from disposing of assets of the corporation pending the hearing on the order to show cause, were issued on June 21, 1949. The order to show cause was continued several times, and upon each continuance it was ordered that the restraining order remain in effect. (The employment of Mr. McGrath as attorney for administratrix was terminated in September, 1949.) On September 28, 1949, the two brothers and Mrs. Harvey entered into an agreement (hereinafter referred to) settling their controversies, which agreement provided among other

things that the corporation be dissolved and the assets distributed equally among the three stockholders. (The employment of Mr. Gall was terminated in February, 1950.) The action was dismissed on May 19, 1950, upon the written request of Mr. Cleveland, who succeeded Mr. Gall as attorney for Mrs. Harvey individually and as administratrix. Mr. Gall testified that he spent 40 hours in preparing the complaint and the papers pertaining to the receivership, and his services were reasonably worth $800. Mr. McGrath testified that he spent 4 hours on those matters, and his services were reasonably worth $80. Mr. Fitzpatrick testified that he spent 23 hours thereon, and his services were reasonably worth $460.

When said attorneys were employed by the administratrix (about 13 months after death of Mr. Harvey) she was in default in filing a preliminary notice of federal estate tax (form 704) and a federal estate tax return (form 706). Mr. Gall secured an extension of time within which to file the return, and no penalty was imposed for the delinquency. He, with the assistance of Mr. Fitzpatrick, prepared and filed such return on form 706. A copy of that return was filed as exhibit 14 herein. It consists of 26 pages—5 pages being in typewriting and 21 pages being printed forms with typewriting thereon. An inventory and appraisement had not been filed at the time the return was filed. Mr. Gall testified that he spent 20 hours in connection with the filing of the return, and his services were reasonably worth $400. Mr. Fitzpatrick testified that he spent 2 hours thereon, and his services were reasonably worth $40.

Another action was pending when said attorneys were employed. It was commenced by the administratrix and was for the purpose of obtaining a declaration of her rights under a life insurance policy on the life of Frank A. Harvey. She alleged therein that the premiums on the policy had been paid from community funds. The action had been set for trial. Mr. Gall concluded that the action should remain dormant. He testified that his services, in checking the file to determine whether the action should be tried, were reasonably worth $20.

A creditor's claim for $7,235.38, filed by James Harvey, was rejected and he commenced an action based thereon. Mr. Gall and the attorney for James entered into a stipulation extending the time to answer. Mr. Gall testified that his services therein were reasonably worth $20.

As above stated, the two brothers and the administratrix

entered into an agreement on September 28, 1949, whereby they agreed to settle the pending litigation and all their other controversies. Mr. Gall and the attorneys who represented the brothers prepared the agreement. Mr. Gall prepared a petition for instructions concerning the compromise agreement. Under the agreement the corporation was to be dissolved and the assets distributed equally among the three stockholders. Mr. Gall testified that he spent 100 hours in the matter of the agreement, and that his services therefor were reasonably worth $2,000. He also testified that the brothers first offered her $12,000 for her interest in the corporation; that since the funds of the corporation and the partnership had been commingled for approximately 20 years it was necessary to have the accounting brought up to date; he studied the account and explained it to Mrs. Harvey and her nephew and her brother; he had many conferences with Mrs. Harvey and counsel for the brothers; the agreement settled about 20 controversial questions; that under the agreement various claims of the brothers against the estate amounting to approximately $5,100 were waived; that certain machinery of the corporation, which had been charged off on the books as having no value (being fully depreciated according to tax returns), was sold at auction for $12,000; that when the administratrix employed Mr. Gall the estate had no income, and the financial condition of the estate was such that the family allowance of $350 per month could not be paid; the gross income of the administratrix from the property received on the settlement is about $15,000 per year.

The estate's one-third interest in the corporation was appraised (about August, 1948) at $42,749.99. The total appraised value of the estate is $46,976.03. The administratrix and decedent were married January 15, 1919.

From the above mentioned testimony of said attorneys, it appears (1) that approximately the total time spent by each attorney, and the reasonable value of his services, were as follows: Mr. Gall, 349 hours, $6,970; Mr. McGrath, 34 hours, $680; and Mr. Fitzpatrick, 110½ hours, $2,210; and (2) that approximately the total time spent by all said attorneys was 493½ hours, and the reasonable value of their services was $9,870. The said attorneys, Mr. Gall and Mr. McGrath, petitioned for an allowance of $8,000 for said services. As above stated, the court allowed $7,000.

Appellant contends, as above stated, that the evidence is insufficient to support the finding that the extraordinary

legal services were of the reasonable value of $7,000. She argues that the services rendered in four of the matters above mentioned were not properly classified as extraordinary services. The matters so referred to are: (1) The petition for construction of the will; (2) the preparation of federal estate tax return; (3) the action regarding the life insurance policy; (4) the action by James upon his rejected claim; and (5) the agreement settling all the litigation and other controversies. As above indicated, the court did not fix a fee for each item of service but fixed a total fee for extraordinary services rendered.

As to the petition for construction of the will, Mr. Gall conceded at the hearing wherein the fees were fixed that about one-half the services in connection with said petition should be regarded as ordinary services. It appears that a substantial part of the services pertaining to said petition consisted of extraordinary services. The appeal from the judgment in the action to restrain the two brothers from transferring the corporation funds to the partnership was pending at the time the said petition for construction of the will was heard. The two brothers were the objectors to said petition for construction of the will. In their brief which was filed in that proceeding they asserted as an issue therein that said appeal was "pending and undecided" and that the facts found in that action "would be res judicata" in the proceeding for construction of the will. They argued in that brief that the court sitting in equity had to invade the normal province of the court sitting in probate in order to settle questions which the administratrix had raised by bringing the action and which the probate court with its restricted jurisdiction could not settle, namely, whether the officers of the corporation had wrongfully transferred funds to the partnership. They also argued therein that the court in equity had to determine the community property question in order to decide the other questions in that action. As above stated, the briefs in said proceeding for construction of the will were extensive. Substantial portions of the briefs were devoted to the discussion of the issues and the law involved in the action on said appeal.

As to the federal estate tax return, it consisted of 26 pages, as above stated, and by reason of the transactions between the corporation and the partnership, covering many years and involving community property and the alleged wrongful transfer of funds, the work required in connection with the

tax return was extensive and complicated. The preparation of that return under the circumstances here should be regarded as extraordinary.

As to the other matters, namely, the actions regarding the insurance policy and the rejected claim, and the settlement agreement, it appears that those matters involved extraordinary services.

Appellant also argues that the amount allowed for services rendered in all the matters was unreasonable. She asserts that the award of $7,000 for extraordinary fees, in an estate of the appraised value of $46,976.03, is an abuse of discretion. In *Estate of Neff*, 56 Cal.App.2d 728 [133 P.2d 413], it was said at page 731 (in quoting from another case): "In a probate matter, it is particularly within the power of the trial judge, who has all of the records before him, to fix and determine what fees are proper. [Citation.] Section 910 of the Probate Code provides that attorneys for executors shall be allowed such amount as the court 'may deem just and reasonable for extraordinary fees.' It is the duty of the court to determine whether or not services denominated 'extraordinary' were necessarily required in the administration of the particular estate, and if so, to decide what would be a just and reasonable allowance. In making its order fixing such fees, the court has a large discretion, and when the court has made its determination in respect thereto, its judgment will not be interfered with on appeal, only in the face of a plain abuse of discretion."

The trial judge in the present case said, in his memorandum of decision, that the attorneys represented the administratrix with a high degree of skill, competence and diligence, that their success in obtaining a reversal of the adverse judgment was of vital importance to the estate, that the successful handling of the heirship proceedings required the application of a high order of ability, that these proceedings were complicated and difficult in both their factual and legal aspects, that the settlement agreement appears to have been favorable and was the result of extended negotiations. When said attorneys were employed by the administratrix the estate was in poor financial condition and a judgment had been rendered against the administratrix in her action to restrain the two brothers from transferring funds of the corporation to the partnership. The appraisal of the estate was made while that litigation was pending. It appears that as a result of services rendered by said attorneys the gross income of

the administratrix from the property she received in the settlement of all litigation and controversies is about $15,000 per year. An attorney at law, who was qualified to give an opinion as to the reasonable value of legal services and who heard the testimony given at the hearing herein, was called as a witness by the appellant (the administratrix). He testified that the services rendered, except those pertaining to the tax return (as to which he had no opinion), were of the reasonable value of $3,750 to $4,000. There was no abuse of discretion in determining the amount of compensation for services rendered.

The order is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied April 18, 1951, and appellant's petition for a hearing by the Supreme Court was denied May 24, 1951.